Paul OEI, an individual; Suzette Oei, an individual, Plaintiffs,

v.

N STAR CAPITAL ACQUISITIONS, LLC; Law Office of D. Scott Carruthers; and Does 1 through 10 inclusive, Defendants.

No. CV06 3086 MMM (MANX).

United States District Court, C.D. California.

Nov. 13, 2006.

---

Eric F. Fagan, Eric F. Fagan Law Offices, Chula Vista, CA, for Plaintiffs.

David J. Kaminski, Martin Schannong, Carlson Messer and Turner, James Fraser Marshall, Jerid R. Maybaum, Russell W. Clampitt, Jacks and Maybaum, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

MORROW, District Judge.

On May 19, 2006, plaintiffs Paul and Suzette Oei filed this action against N Star Capital Acquisitions LLC ("North Star"), the Law Offices of D. Scott Carruthers, and certain unnamed defendants. The complaint asserts, against all defendants, a claim under the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. §§ 1692–1692o, and a claim under California law for intentional infliction of emotional distress. The complaint also asserts, against North Star and Does 6 through 10, a claim under the Robbins–Rosenthal Fair Debt Collections Practices Act (the "Rosenthal Act"), California Civil Code §§ 1788–1788.33. Plaintiffs seek actual damages, punitive damages, statutory

damages, costs, attorney's fees, declaratory relief, and other appropriate relief. On July 21, 2006, defendant North Star filed a motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. FACTUAL BACKGROUND

Paul and Suzette Oei (collectively, "the Oeis") have purportedly never possessed or used an Aspire Visa credit card.[1] Nonetheless, on September 8, 2005, North Star sought to collect a debt allegedly owed by the Oeis on an Aspire Visa credit card account by having its attorney, Carruthers, file an action against the Oeis in Los Angeles Superior Court.[2] North Star and Carruthers regularly engage in the collection of debts from consumers using the mail and telephone.[3]

On September 16, 2005, an unidentified agent of North Star (Doe 6) contacted Suzette Oei at her place of employment, demanding that she pay the alleged debt.[4] When she explained that neither she nor Paul Oei had ever had an Aspire Visa credit card account, the caller accused her of being a liar.[5] Although Suzette Oei demanded that Doe 6 stop calling her at work, he called twenty-three times.[6]

Paul Oei was personally served with the summons and complaint in the state-court action on October 12, 2005; after receiving the documents, he called Carruthers' office and spoke to an unidentified individual (Doe 1).[7] Although Paul Oei told Doe 1 that neither he nor Suzette Oei had ever had an Aspire Visa account, Doe 1 demanded that Paul Oei make pay the alleged debt in full or set up a payment plan to do so.[8] After asking to speak with a manager, Paul Oei talked to another unidentified individual (Doe 2), who again demanded that he pay the alleged debt in full, and threatened to garnish the Oeis' wages and record a lien against their home if he did not.[9] Paul Oei gave Doe 2 the number of his Providian Visa credit card, thinking that it might be the account in question, but Doe 2 told him it was not.[10]

Doe 2 told Paul Oei that she would investigate the matter and get back to him, but Paul Oei never heard from her again.[11] Instead, a third unidentified agent of Carruthers (Doe 3) allegedly called the Oeis' home every day for two weeks.[12] On one occasion, he spoke with the Oeis' fifteen-year old daughter and coaxed her to provide Paul Oei's cell phone number, saying he was one of her father's "old friend[s]." [13] Doe 3 purportedly called Paul Oei's cell phone twice a day for the next ten days.[14]

---

1. Complaint, ¶ 3, 13.

2. *Id.*, ¶¶ 12, 14.

3. *Id.*, ¶ 6.

4. *Id.*, ¶¶ 26.

5. *Id.*

6. *Id.*, ¶¶ 26–27.

7. *Id.*, ¶ 16.

8. *Id.*, ¶¶ 17–18.

9. *Id.*, ¶¶ 19–20.

10. *Id.*, ¶ 21.

11. *Id.*, ¶ 22.

12. *Id.*, ¶ 23.

13. *Id.*, ¶ 24.

14. *Id.*, ¶ 25. The complaint alleges that "between September 16, 2005 and November 1, 2005," the Oeis "estimate that they received fifty-eight calls from DOES 1 through 10, which callers were employees of Defendant CURTIS O. BARNES." (*Id.*, ¶ 30.) Curtis O. Barnes is neither a party to this action, nor does the complaint allege sufficient facts to state a claim against him. However, mindful

On January 18, 2006, Carruthers obtained default judgment against the Oeis.[15] On January 27, 2006, Carruthers served garnishment papers on Suzette Oei's employer; her wages were garnished twice.[16] The Oeis obtained legal counsel, and on March 29, 2006, Carruthers entered into a stipulation with the Oeis' attorney to set aside the default judgment and return Suzette Oei's garnished wages to her.[17] On April 17, 2006, Carruthers requested that the court dismiss the action without prejudice.[18]

The Oeis allege that, as a result of defendants' actions, they have suffered severe mental anguish and their marital relationship has deteriorated.[19] Suzette Oei was forced to take medication to counter an increase in her blood pressure, alleviate headaches, and counter anxiety attacks.[20] Paul Oei was forced to change his cell phone number to avoid defendants' purportedly incessant harassment.[21]

## II. DISCUSSION

### A. Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

■ A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also, e.g., *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir.1997). Thus, a Rule 12(b)(6) dismissal is proper only where plaintiff "lack[s] ... a cognizable legal theory" or fails to allege "sufficient facts [to support] ... a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988).

In deciding a Rule 12(b)(6) motion to dismiss, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). The court must accept plaintiff's factual allegations as true, and construe them and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir.1995). It need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

### B. Whether the Complaint States a Claim Under the FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent

---

of its obligation under Rule 8(f) of the Federal Rules of Civil Procedure to construe pleadings so "as to do substantial justice," the court *provisionally* construes this paragraph as alleging that Does 1 through 10 were "employees of defendants North Star and Carruthers." Plaintiffs are directed to file a notice of errata within five days of the date of this order clarifying paragraph 30.

**15.** *Id.,* ¶ 29.

**16.** *Id.,* ¶ 28.

**17.** *Id.,* ¶ 31.

**18.** *Id.,* ¶ 32.

**19.** *Id.,* ¶ 34.

**20.** *Id.,* ¶ 35.

**21.** *Id.,* ¶ 36.

State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To effectuate this purpose, the Act prohibits a "debt collector" from making false or misleading representations and from engaging in various abusive and unfair practices. The Act states, for example, that a "debt collector" may not use violence, obscenity, or made repeated annoying phone calls, *id.* § 1692d; that it may not falsely represent "the character, amount, or legal status of any debt." *id.* § 1692e(2)(A); and that it may not use "unfair or unconscionable means to collect or attempt to collect" a consumer debt, *id.* § 1692f. Among other things, the Act establishes rules that a debt collector must follow in "acquiring location information" about the debtor, *id.* § 1692b; communicating about the debtor (and the debt) with third parties, *id.* § 1692c(b); and bringing "[l]egal actions," *id.* § 1692i. "Debt collectors" who violate the provisions of the Act can be held civilly liable to those whom they harass, mislead, or treat unfairly. *Id.* § 1692k.

North Star argues that the Oeis' complaint fails to state a claim under the FDCPA because it relies exclusively on a theory of vicarious liability, attempting to hold North Star liable for the actions of its attorney, Carruthers. This renders the claim fatally defective, North Star asserts, because it cannot be held vicariously liable for the actions of an independent contractor, and attorneys are independent contractors as a matter of law.[22] North Star also contends that it is exempt from liability under § 1692a(6)(A) of the Act.[23] It asserts that, if it had *directly* attempted to collect the Aspire Visa debt from the Oeis, it would have done so in its own name and come within the exemption set forth in that section. Because it could not be held directly liable for debt collection activities, North Star contends, it would be anomalous to hold it vicariously liable for the collection actions of its attorney.[24] Finally, North Star argues that it cannot be held vicariously liable under the FDCPA because its attorney's purported violations of the Act were privileged under California Civil Code § 47(b)(2), California's "litigation privilege." [25]

## 1. Whether North Star Can Be Held Vicariously Liable for the Acts of its Attorney Under the FDCPA

■ North Star first argues that it cannot be held vicariously liable for Carruthers' actions because he was an independent contractor.[26] Given controlling Ninth Circuit precedent, the court cannot agree.

The Ninth Circuit recently held that "general principles of agency . . . form the

**22.** Defendant North Star Acquisition LLC's Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim ("Def.'s Mem.") at 3–4

**23.** *Id.* at 4–5.

**24.** *Id.*

**25.** *Id.* at 5–8.

**26.** *Id.* at 3–4. Although not raised by plaintiffs in their opposition, it appears, contrary to North Star's contention, that the complaint alleges direct debt collection activity by North Star. Plaintiffs' second cause of action for violation of the Rosenthal Act is asserted against North Star and Does 6–10. It would appear, therefore, that, in making calls to Suzette Oei at work, Doe 6 was acting as an agent of North Star, rather than Carruthers. (See Complaint, ¶¶ 41–45.) Because Doe 6 is alleged to have engaged in activity that violated the FDCPA (see *id.*, ¶¶ 26–27), it may well be that the complaint alleges that North Star engaged in direct debt collection activities. Because the court determines that North Star can be held vicariously liable for its attorney's acts, however, the court need not resolve this issue at this time.

basis of vicarious liability under the FDCPA." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir.2006) (citing *Newman v. Checkrite California,* 912 F.Supp. 1354, 1370 (E.D.Cal.1995)). To ascertain "general principles of agency," courts consult the Restatement (Second) of Agency. See *id.* (applying § 1 of the Restatement to determine whether an attorney could be held vicariously liable for the acts of a debt collector under the FDCPA and concluding that he could not because he did not exercise adequate control over the debt collector's conduct); *Newman,* 912 F.Supp. at 1370 n. 19 (noting that both federal and California courts rely on the Restatement to ascertain common-law principles of agency). Under the Restatement, attorneys are, as a matter of law, both independent contractors *and* agents:

> " '[I]ndependent contractor' is a term which is antithetical to the word 'servant,' although not to the word 'agent.' In fact, most of the persons known as agents, [e.g.] ... attorneys ..., are independent contractors as the term is used in [this] Restatement ..., since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. *However, they fall within the category of agents.* They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedi-

ence." RESTATEMENT (SECOND) OF AGENCY § 14N cmt. a (emphasis added).

See also *Dearborn v. Mar Ship Operations,* 113 F.3d 995, 998 n. 3 (9th Cir.1997) (" '[A]n independent contractor, no less than a servant may be an agent in that he is employed as a fiduciary, acting for the principal with the principal's consent and subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf,' " quoting *Petition of United States,* 367 F.2d 505, 509 (3d. Cir.1966), which cites RESTATEMENT (SECOND) OF AGENCY § 14N).

Accordingly, courts routinely hold debt collectors vicariously liable under the FDCPA for the conduct of their attorneys in collecting debts on their behalf. See, e.g., *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994) (holding a debt collector vicariously liable for an attorney's violation of the FDCPA venue provision);[27] *Newman,* 912 F.Supp. at 1369–70 (rejecting defendants' argument that attorneys were only "independent contractors" but not "agents," and holding that a debt collector could be held vicariously liable for an attorney's acts in "facilitating the collection of amounts due [the debt collector] through use of the legal process"); see also *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 405 (3d Cir. 2000) (holding that an entity that is itself a "debt collector" and hence subject to the FDCPA should "bear the burden of monitoring the activities of those it enlists to collect debts on its behalf"); *Caron v. Charles E. Maxwell, P.C.,* 48 F.Supp.2d

---

**27.** At the hearing, defendant argued that the court's "reliance" on *Fox* was misplaced, because that decision concerned only the imposition of vicarious liability under the FDCPA's venue provision, 15 U.S.C. § 1692i(a). As this order makes clear, the court's conclusion that debt collectors may be vicariously liable under the FDCPA for the collection efforts of their attorneys is based primarily on *Clark* and the principles of common law agency

articulated in the Restatement (Second) of Agency. The court cites *Fox* simply as one example of the fact that courts routinely hold debt collectors vicariously liable under the FDCPA for the conduct of their attorneys, and as evidence that defendant's assertion that lawyers are "independent contractors" rather than "agents" and can never be held vicariously liable under the FDCPA fails as a matter of law.

932, 936 (D.Ariz.1999) (recognizing that a client may be vicariously liable for his attorney's violations of the FDCPA if both the attorney and the client are "debt collectors" within the meaning of the statute); *First Interstate Bank of Fort Collins v. Soucie,* 924 P.2d 1200, 1202 (Colo.App. 1996) ("Federal courts that have considered the issue have held that the client of an attorney who is a 'debt collector' [under the Act] is vicariously liable for the attorney's misconduct if the client is itself a debt collector as defined in the statute. Thus, vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are [statutory] 'debt collectors' . . ." (citation omitted)).

As a result, North Star's argument that attorneys are, as a matter of law, exclusively "independent contractors"—such that it cannot be held vicariously liable under the FDCPA for the debt-collection efforts of its counsel—lacks merit.[28]

**28.** In support of this argument, defendant relies exclusively on *Lynn v. Superior Court,* 180 Cal.App.3d 346, 349, 225 Cal.Rptr. 427 (1986). This reliance is misplaced for two reasons. First, and most importantly, even if *Lynn* had held, as a matter of California law, that a client may not be held vicariously liable for his or her attorney's actions, this holding would be inapposite, as the scope of vicarious liability under the FDCPA is a question of federal rather than state law. Cf. *Fox,* 15 F.3d at 1516 ("Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken [in enacting the FDCPA]").

Second, North Star fails to appreciate the limited scope of the *Lynn* court's holding. The *Lynn* court held only that a client is not liable for torts committed by his attorney *in his role as trial attorney. Lynn,* 180 Cal. App.3d at 349, 225 Cal.Rptr. 427. In reaching this conclusion, the *Lynn* court relied heavily on *Merritt v. Reserve Ins. Co.,* 34 Cal. App.3d 858, 110 Cal.Rptr. 511 (1973), which it felt controlled resolution of the issue. *Lynn,* 180 Cal.App.3d at 348, 225 Cal.Rptr. 427. *Merritt* involved a claim by an insured's assignee against an insurance company; the assignee sought to hold the insurer vicariously liable for the negligent defense of a personal injury action filed against the insured and defended by independent counsel the insurer had retained. *Merritt,* 34 Cal.App.3d at 861–62, 110 Cal.Rptr. 511. The *Merritt* court rejected the proposition that the insurer could be held vicariously liable for the manner in which counsel conducted the litigation, and in this context held that "independent trial counsel" must be considered an "independent contractor" rather than an "agent" for purposes of determining the vicarious liability of those who retained him. *Id.* at 880, 110

Cal.Rptr. 511. The court emphasized that the insurer itself "had no [legal] authority to . . . [defend its insured against lawsuits]" and therefore that it had to "rely on independent counsel for the conduct of . . . litigation." *Id.* at 880–81, 110 Cal.Rptr. 511. Consequently, it reasoned, the insurer did not "control and direct[ ] . . . the details and manner of [independent trial counsel's] performance." *Id.* at 880, 110 Cal.Rptr. 511. The court contrasted an attorney's role as trial counsel with other situations in which an attorney might be considered his client's agent, e.g., "in carrying out nonlegal functions" or in conducting "business transactions." *Id.* at 881, 110 Cal. Rptr. 511. In these situations, the court observed, the client could be held vicariously liable for its attorney's acts. *Id.* Like *Merritt, Lynn* held only that counsel's role in prosecuting an unlawful detainer action could not expose his clients to vicarious liability for intentional or negligent infliction of emotional distress. The *Lynn* court recognized that, in a myriad of other situations, vicarious liability could attach. *Lynn,* 180 Cal.App.3d at 348–49, 225 Cal.Rptr. 427.

As a result, even as respects plaintiffs' Rosenthal Act claim, a California claim to which *Lynn* applies, the decision *at most* insulates North Star from vicarious liability for Carruthers' filing and prosecution of the state court collection action. It does not protect North Star from liability for such "nonlegal" conduct as making repeated harassing telephone calls. Telephoning debtors is not an activity that only attorneys have "authority" to perform due to their professional license; it is not, therefore, conduct that North Star had no ability to "control and direct." As a result, under *Lynn* and *Merritt,* North Star may be held vicariously liable for such activity.

## 2. Whether North Star Is a "Debt Collector" for Purposes of the FDCPA

■ To be held directly liable for violation of the FDCPA, a defendant must—as a threshold requirement—fall within the Act's definition of "debt collector." See *Heintz v. Jenkins,* 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); see also, e.g., *Romine v. Diversified Collection Servs.,* 155 F.3d 1142, 1146 (9th Cir.1998). *Vicarious* liability under the Act has similarly been restricted to principals who themselves are statutory "debt collectors." See, e.g., *Pollice,* 225 F.3d at 403–04; *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector' "); *Caron,* 48 F.Supp.2d at 936; *First Interstate Bank of Fort Collins,* 924 P.2d at 1202. The FDCPA defines "debt collector," in pertinent part, as

> "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Hence, a "debt collector" under the FDCPA is either (1) "a person" whose business's "principal purpose" is the collection of debts (whether on behalf of himself or others); or (2) "a person" who "regularly" collects debts on behalf of others (whether or not it is the principal purpose of his business).

■ The complaint alleges that North Star is "a limited liability corporation doing business of collecting debts"; [29] that it is "engaged in the collection of debts from consumers"; [30] and that it "regularly attempts to collect consumer debt." [31] The complaint clearly alleges, therefore, that North Star is a "debt collector" as defined by the statute.

Despite these allegations, North Star asserts that it falls within the FDCPA's exemption from liability because it is "a creditor who attempt[ed] to collect in its own name" (citing 15 U.S.C. § 1692a(6)(A)).[32] The "distinction between creditors and debt collectors is fundamental to the FDCPA," because the Act "does not regulate creditors' activities at all." *Randolph v. IMBS, Inc.,* 368 F.3d 726, 729 (7th Cir.2004). As a result, courts have routinely held that "[c]reditors who collect [debts] in their own name *and whose principal business is not debt collection ...* are not subject to the [FDCPA]." *Aubert v. American General Finance, Inc.,* 137 F.3d 976, 978 (7th Cir.1998) (emphasis added); see also *Marketic v. U.S. Bank Nat. Ass'n,* 436 F.Supp.2d 842, 854 (N.D.Tex.2006) (noting "the statutory exclusion from liability ... for creditors who attempt to collect debts owed to them while using their own names"); *Frame v. Weltman, Weinberg & Reis,* No. 1:05CV2049, 2006 WL 1348176, *2 (N.D.Ohio May 12, 2006) ("As a matter of law, the FDCPA does not apply to creditors, their employees or officers, or their affiliates"); *KPMG Peat Marwick v. Texas Commerce Bank,* 976 F.Supp. 623, 632 (S.D.Tex.1997) ("TCB is not a 'debt collec-

**29.** Complaint, ¶ 4.

**30.** *Id.,* ¶ 6.

**31.** *Id.*

**32.** Def.'s Mem. at 5.

tor' subject to liability under the FDCPA, which provides for civil liability only for a 'debt collector who fails to comply with any provision of this subchapter.' 15 U.S.C. § 1692k(a). Any claim regarding TCB's conduct on its own behalf is precluded by the statutory definition of 'debt collector,' which excludes 'any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor,' as well as 'any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts' ").

In deciding a Rule 12(b)(6) motion to dismiss, however, the court must accept plaintiff's factual allegations as true and construe them in favor of the nonmoving party. See, e.g., *Cahill*, 80 F.3d at 337–38. Because the complaint clearly alleges that North Star is a "debt collector" as that term is defined in the Act, North Star's motion to dismiss on the ground that it is not a "debt collector" must be denied.

### 3. Whether the California "Litigation Privilege" Bars Plaintiffs' FDCPA Claim

■ North Star argues finally that it cannot be held vicariously liable under the FDCPA for the debt-collection efforts of its attorney because all of those actions were privileged under California Civil Code § 47(b)(2). This statute codifies the California litigation privilege.[33] This argument fails. It is well settled that the Supremacy Clause of the United States Constitution grants Congress the power to preempt state and local laws. See, e.g., *Oxygenated Fuels Ass'n v. Davis*, 331 F.3d 665, 667 (9th Cir.2003). As a result, it is

equally well settled that the California litigation privilege does not apply to federal causes of action, including FDCPA claims. See *Irwin v. Mascott*, 112 F.Supp.2d 937, 962–63 (N.D.Cal.2000) (holding that the litigation privilege is inapplicable to claims under the FDCPA); see also, e.g., *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) ("It is clear that the California immunity statute does not control this claim [under § 1983] even though the federal cause of action is being asserted in the state courts"); *Pardi v. Kaiser Foundation Hosp.*, 389 F.3d 840, 851 (9th Cir.2004) (holding that defendant was not entitled to assert the litigation privilege as a shield against liability under the ADA); *Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir.1996) (holding that the California litigation privilege did not bar plaintiff's § 1983 claim due to the Supremacy Clause); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F.Supp.2d 1053, 1056 (N.D.Cal.1998) (holding that any immunity under Civil Code § 47(b) is preempted by the Fair Labor Standards Act "by virtue of the Supremacy Clause"). North Star's motion to dismiss the FDCPA claim on the basis of the state litigation privilege is therefore denied.

### C. Whether the Complaint States Claims Under California Law for Violation of the Rosenthal Act and for Intentional Infliction of Emotional Distress

North Star argues that plaintiffs' state-law causes of actions must be dismissed, *inter alia*, because the alleged acts giving rise to the claims are privileged under California's litigation privilege. Civil Code § 47 exempts from liability a "publication or broadcast" made "[i]n any ... judicial proceeding [or] ... other official proceed-

---

**33.** *Id.* at 5–8.

ing authorized by law." CAL. CIV. CODE § 47(b).[34] The Oeis contend the privilege does not apply (1) because the act giving rise to liability is the filing of a time-barred lawsuit, which is "conduct" rather than "communication";[35] (2) because debt collectors who misuse the judicial system cannot assert the privilege;[36] (3) because their claims are "akin" to malicious prosecution, to which the privilege does not apply;[37] and (4) because North Star's alleged actions "go well beyond those normally taken in litigation" and fall outside the scope of the protection afforded by the privilege as a result.[38]

▮▮▮ "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b) [of the California Civil Code]." *Rubin v. Green*, 4 Cal.4th 1187, 1193, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993). To invoke the privilege, the party claiming it must show that the communication at issue was "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [it has] some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 212, 266 Cal. Rptr. 638, 786 P.2d 365 (1990); see also *Rothman v. Jackson*, 49 Cal.App.4th 1134, 1140, 57 Cal.Rptr.2d 284 (1996) ("The privilege applies to any publication or other communication required or permitted by law in the course of a judicial or quasi-judicial proceeding to achieve the objects of the litigation, whether or not the publication is made in the courtroom or in court

pleadings, and whether or not any function of the court or its officers is involved").

▮▮▮ "Although originally enacted with reference to defamation, the privilege is now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution." *Silberg*, 50 Cal.3d at 212, 266 Cal.Rptr. 638, 786 P.2d 365. It is well established, for example, that claims for intentional infliction of emotion distress are subject to the litigation privilege. See *Rusheen v. Cohen*, 37 Cal.4th 1048, 1064, 39 Cal.Rptr.3d 516, 128 P.3d 713 (2006) (citing *Kachig v. Boothe*, 22 Cal.App.3d 626, 640–41, 99 Cal.Rptr. 393 (1971)). Additionally, in the absence of statutory language indicating a contrary legislative intent, the litigation privilege applies to statutory causes of action as well. See, e.g., *Ribas v. Clark*, 38 Cal.3d 355, 364–65, 212 Cal.Rptr. 143, 696 P.2d 637 (1985) ("It appears no case has ever considered the applicability of [the litigation privilege] to statutory causes of action. However, the purpose of the judicial proceedings privilege seems no less relevant to such claims.... [N]othing indicates that in enacting Penal Code section 637.2 the Legislature intended to immunize causes of action under that statute from the traditional privileges applicable to various forms of oral evidence"); see also *Rubin*, 4 Cal.4th at 1202–03, 17 Cal. Rptr.2d 828, 847 P.2d 1044 (applying the litigation privilege to claims under California's unfair competition law, Business & Professions Code §§ 17200 et seq. because "[i]f the policies underlying section 47(b) are sufficiently strong to support an absolute privilege [against common law

---

**34.** Def.'s Mem. at 5–8.

**35.** Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Pls.' Opp.") at 6.

**36.** *Id.*

**37.** *Id.*, at 7.

**38.** *Id.*

tort claims]", the resulting immunity should not evaporate merely because the plaintiff discovers a conveniently different [statutory] label for pleading what is in substance an identical grievance arising from identical conduct as that protected by section 47(b)).

No published California case appears to have examined the interaction between the litigation privilege and the Rosenthal Act. Were the privilege to apply broadly to Rosenthal Act claims, however, it would effectively immunize conduct that the Act prohibits. The Act, for example, proscribes threats that failure to pay a consumer debt may result in the garnishment of the debtor's wages or the sale of his property, CAL. CIV. CODE § 1788.10(e), as well as repeated, continuous and harassing telephone calls *id.*, § 1788.11(d), (e). This is precisely the type of conduct in which the Oeis allege defendants engaged.

The complaint alleges that, after commencing a state-court collection action, defendants called the Oeis incessantly on the telephone, verbally harassing them and falsely accusing them of owing North Star an outstanding debt. The complaint further alleges that the communications were intended to goad the Oeis into paying the debt they purportedly owed North Star. Payment, of course, was also the remedy North Star sought in the pending collection action. If the litigation privilege were applicable to Rosenthal Act claims, these communications would fall within its scope as they were made by a litigant in connection with a judicial proceeding to achieve the object of the litigation. See *Wentner v. Ridgewood Energy Corp.*, 62 F.3d 1427, 1995 WL 470866, *11 (9th Cir. Aug.9, 1995) (Unpub.Disp.) ("We conclude that Ridgewood's communications to Wentner are privileged as statements related to the present litigation. The statement 'we'll destroy you,' within the context of a settle-

ment discussion, is protected under the litigation privilege as an attempt to achieve the objects of the litigation"); see also *Asia Investment Co. v. Borowski*, 133 Cal. App.3d 832, 843, 184 Cal.Rptr. 317 (1982) (holding that settlement proposals, even if "made in a manner which might be considered a veiled 'threat,'" are privileged under Civil Code § 47(2)); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936 (9th Cir. 2006) (noting that California's litigation privilege protects presuit settlement demands); *Blanchard v. DIRECTV, Inc.* 123 Cal.App.4th 903, 921–22, 20 Cal.Rptr.3d 385 (2004) (stating that "[t]he litigation privilege is simply a test of connectedness or logical relationship to litigation," and noting that a party cannot avoid application of the privilege by arguing that statements were published to coerce a settlement); *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal.App.4th 17, 24, 116 Cal.Rptr.2d 583 (2002) ("The privilege attaches even though the publication was made outside a courtroom, as many portions of a 'judicial proceeding' occur outside of open court.... It applies to statements made by counsel during settlement negotiations," internal quotation marks omitted); *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal.App.4th 1359, 1379–80, 88 Cal. Rptr.2d 802 (1999) (noting that a "classic example" of a situation in which the litigation privilege would apply is an "attorney demand letter threatening to file a lawsuit if a claim is not settled").

Applying the privilege in this manner would effectively vitiate the Rosenthal Act and render the protections it affords meaningless. As there appears to be no way to reconcile the statutes, the court applies the familiar principle of statutory construction that, in cases of irreconcilable conflict, the specific statute prevails over the general one. See *Medical Bd. of California v. Superior Court*, 88 Cal.

App.4th 1001, 106 Cal.Rptr.2d 381, (2001) ("[A]s both Code of Civil Procedure section 1859 and our state Supreme Court make clear, a specific statutory provision should prevail over the general provision only where the court must choose one over the other because the two cannot be reconciled," citing, *inter alia, People v. Wheeler,* 4 Cal.4th 284, 14 Cal.Rptr.2d 418, 841 P.2d 938 (1992), and 2B Sutherland, STATUTORY CONSTRUCTION, § 51.02, at 187 (6th ed.2000)). Indeed, California courts, in analogous contexts, have applied this principle to override application of the litigation privilege. See *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone,* 107 Cal.App.4th 54, 81, 131 Cal. Rptr.2d 777 (2003) ("Counsel retained by an insurer has an obligation to be truthful in describing insurance coverage to a third party beneficiary. The litigation privilege is not a license to deceive an injured party who steps into the shoes of the insured.... Section 11580 grants an injured party the right to file suit in order to recover under the insurance policy. Coverage counsel may not commit fraud in an attempt to defeat that right. And to the extent there is a conflict between an injured party's rights under section 11580 [the direct action statute] and coverage counsel's reliance on the litigation privilege (Civ.Code, § 47, subd. (b)), the rights of the injured party prevail as they arise under the more specific of the two statutes"); *Schoendorf v. U.D. Registry, Inc.,* 97 Cal.App.4th 227, 243, 118 Cal.Rptr.2d 313 (2002) (rejecting defendant's contention that the litigation privilege protected statements by a non-litigant about past litigation, but stating that "to the extent that the [California Consumer Credit Reporting Agencies Act and the federal Fair Credit Reporting Act] cannot be reconciled with the privilege, the CCRAA and FCRA, being more specific, prevail over the litigation privilege, which is more general").[39] Because it concludes that the litigation privilege and the Rosenthal Act cannot be reconciled in the context of this case and the alleged conduct in which defendants engaged, it applies the more specific statute—the Rosenthal Act—and denies North Star's motion to dismiss the Oeis' Rosenthal Act claims under Civil Code § 47.

The same is not true of the Oeis' intentional infliction of emotional distress claim, however. As noted, California courts have regularly applied the litigation privilege to common law emotional distress claims. See *Kachig,* 22 Cal.App.3d at 640–41, 99 Cal.Rptr. 393; see also *Rusheen,* 37 Cal.4th at 1064, 39 Cal.Rptr.3d 516, 128 P.3d 713; *Jeffrey H. v. Imai, Tadlock & Keeney,* 85 Cal.App.4th 345, 101 Cal. Rptr.2d 916. 361 (2000) ("As noted in *Silberg,* a line of decisions holds that Civil Code section 47, subdivision (b)(2), immunizes defendants from tort liability based on theories of intentional infliction of emotional distress"); *Begier v. Strom,* 46 Cal. App.4th 877, 882, 54 Cal.Rptr.2d 158 (1996) ("Insofar as plaintiff alleges defendant made false accusations within the dissolution action, defendant's statements are

---

**39.** In an unpublished decision in 2005, Division 3 of the Second District Court of Appeal considered the application of the litigation privilege to claims brought under the Rosenthal Act. See *First North American Nat. Bank v. Superior Court,* No. B176618, 2005 WL 67123 (Cal.App. Jan.13, 2005). Although the court did not discuss the principle that a more specific statute prevails over a general one in the event of direct conflict, it concluded that the litigation privilege did not apply to Rosenthal Act claims. *Id.* at *6. The court's rationale makes clear that it applied this principle of statutory construction without expressly mentioning it. *See id.* ("To conclude that Civil Code section 47 provides debt collectors with a blanket privilege to engage in the same conduct proscribed by the Legislature in the Rosenthal Act would be to nullify the Rosenthal Act").

privileged and cannot give rise to a cause of action for intentional infliction of emotional distress"); *Laffer v. Levinson, Miller, Jacobs & Phillips,* 34 Cal.App.4th 117, 122, 40 Cal.Rptr.2d 233 (1995) ("This privilege is a defense to other torts as well as defamation, including, as alleged here, intentional interference with economic relations and intentional infliction of emotional distress").

 None of the Oeis' remaining arguments against application of the privilege overcome this precedent. They argue, for example, that the act giving rise to liability here is the filing of a time-barred lawsuit, which is "conduct" rather than a "communication," and hence not privileged.[40] " 'In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.' " *Broam v. Bogan,* 320 F.3d 1023, 1026 n. 2 (9th Cir.2003) (quoting *Schneider v. Cal. Dep't of Corrections,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) (emphasis original)). Here, the complaint does not allege—or even suggest—that defendants' liability arises from the filing of a time-barred suit. As a result, the court cannot consider this argument in deciding whether to dismiss. Even were this not the case, moreover, the filing of a time-barred lawsuit is not "conduct" beyond the scope of the litigation privilege. See. e.g., *Kashian v. Harriman,* 98 Cal.App.4th 892, 917, 120 Cal.Rptr.2d 576 (2002) (holding that the "fil[ing][of] meritless lawsuits on behalf of 'sham plaintiffs' " was "essentially communicative conduct" to which the litigation privilege applied, "even though it also may have involved noncommunicative acts").

 The Oeis also assert that because their emotional distress claim is "akin" to malicious prosecution,[41] they should not be subject to the litigation privilege. This argument lacks merit. As an initial matter, the Oeis do not explain how their emotional distress claim—which concerns defendants' harassment of them via telephone in order to collect a debt—is "akin" to a malicious prosecution claim, i.e., the prosecution a judicial action without probable cause and with malicious intent. More fundamentally, the California Supreme Court has squarely rejected the Oeis' argument, holding that only claims that incorporate all elements of a malicious prosecution claim are exempt from operation of the litigation privilege. See *Hagberg v. Cal. Federal Bank FSB,* 32 Cal.4th 350, 375, 7 Cal.Rptr.3d 803, 81 P.3d 244 (2004); see also, e.g., *Abraham v. Lancaster Community Hosp.,* 217 Cal.App.3d 796, 824–25, 266 Cal.Rptr. 360 (1990) (rejecting plaintiff's argument that the litigation privilege should not apply to a claim for abuse of process because it was similar to a claim for malicious prosecution). Consequently, the Oeis' argument in this respect is unavailing.

Finally, the Oeis contend that a defendant like North Star that misuses the judicial system cannot assert the litigation privilege.[42] In support of this proposition, they cite *Carney v. Rotkin, Schmerin & McIntyre,* 206 Cal.App.3d 1513, 254 Cal. Rptr. 478 (1988) and *Kinnamon v. Stait-*

---

**40.** Pls.' Opp. at 6.

**41.** "To establish a cause of action for malicious prosecution, the plaintiff must prove [a] prior action was: (1) brought by the defendant and resulted in a favorable termination for the plaintiff; (2) initiated or continued

without probable cause; and (3) initiated with malice." *Robinzine v. Vicory,* 143 Cal. App.4th 1416, 1422, 50 Cal.Rptr.3d 65, 69 (2006).

**42.** Pls.' Mem., at 6.

man & Snyder, 66 Cal.App.3d 893, 136 Cal.Rptr. 321 (1977).[43] The Oeis' reliance on these authorities is misplaced. To the extent that the cases impose an "interest of justice" requirement as a condition for application of the litigation privilege, both were overruled, either explicitly (Kinnamon) or implicitly (Carney), by the California Supreme Court in Silberg. See Silberg, 50 Cal.3d at 219, 266 Cal.Rptr. 638, 786 P.2d 365; see also Kashian, 98 Cal. App.4th at 917–20, 120 Cal.Rptr.2d 576 (recognizing the overruling of Kinnamon and Carney).[44] As the Silberg Court observed,

> "while the added moral consideration injected by the [interest of justice requirement] may [at first have] seem[ed] attractive, on further reflection it is seen to be a drastic departure from precedent and largely destructive of the principal purpose of the litigation privilege. It would permit derivative tort suits in many, if not most, cases on the ground that an otherwise privileged communication was not made for the purpose of promoting justice, a charge easily and quickly made by an adversary." Silberg, 50 Cal.3d at 217, 266 Cal.Rptr. 638, 786 P.2d 365.

Noting that the "interest of justice" test was "wholly inconsistent with the numerous cases in which fraudulent communications or perjured testimony have nevertheless been held privileged" (id. at 218, 266 Cal.Rptr. 638, 786 P.2d 365), it continued:

> "Obviously, such a test would also be contrary to the decisions in which liability for abuse of process is held precluded by the privilege. One of the two necessary elements of that tort is an ulterior purpose. Finally, endorsement of the 'interest of justice' requirement would be tantamount to the exclusion of all tortious publications from the privilege, because tortious conduct is invariably inimical to the 'interest of justice.' Thus, the exception would subsume the rule." Id. (citations omitted).

The Court recognized that strict application of the privilege to proscribe derivative tort actions necessarily meant that some injuries would go uncompensated. It stated, however, that "[t]he salutary policy reasons for an absolute privilege supercede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings." Id. at 218, 266 Cal.Rptr. 638, 786 P.2d 365. Consequently, the court finds that the Oeis' claim for intentional infliction of emotional distress is barred by the litigation privilege set forth in California Civil Code § 47.

## III. CONCLUSION

For the foregoing reasons, defendant North Star's motion to dismiss is granted

---

43. Id.

44. Kashian itself is instructive. There, plaintiff alleged that defendant violated the UCL by filing meritless lawsuits on behalf of "sham" public-interest groups to create the false impression that the suits were brought in the public interest; plaintiff alleged that defendant did this to "recruit" legitimate clients and extort settlements from those he sued. Kashian, 98 Cal.App.4th at 902–03, 120 Cal. Rptr.2d 576. The court held that the claim was barred by the litigation privilege, even though the conduct in which defendant allegedly engaged was a misuse of the judicial system. Id. at 917–20, 120 Cal.Rptr.2d 576. After a through review of the applicable precedent, the court observed that "communications made in connection with litigation do not necessarily fall outside the privilege simply because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal." Consequently, it concluded that the litigation privilege applied to defendant's communications, which "were not only related to the litigation, [but] ... were [rather] the litigation [itself], or more accurately the pleadings in the litigation." Id. at 920, 120 Cal. Rptr.2d 576.

in part and denied in part. Specifically, the court denies North Star's motion to dismiss plaintiffs' claims under the FDCPA and the Rosenthal Act. It grants North Star's motion to dismiss plaintiffs' state-law claim for intentional infliction of emotional distress, however, as it concludes that the claim is barred by the litigation privilege codified in California Civil Code § 47(b). Generally, when the court determines that a claim must be dismissed, it liberally grants leave to amend so that plaintiff may make a further attempt to state a cognizable claim for relief. Where, however, a claim fails as a matter of law, granting leave to amend would be futile. See, e.g., *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir.2004) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts..."); *Cahill*, 80 F.3d 336, 339 (9th Cir.1996). Because this is the case here, the court dismisses plaintiffs' infliction of emotional distress claim with prejudice.