Filed 5/24/23; Certified for Publication 6/21/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID C. MINSER, JR., | B318325, B321996 |
| Plaintiff and Respondent, | (San Luis Obispo County Super. Ct. No. 16CVP0156) |
| v. | |
| COLLECT ACCESS, LLC, | |
| Defendant and Appellant. | |

APPEALS from a judgment and an order of the Superior Court of San Luis Obispo County, Hernaldo J. Baltodano, Judge. Affirmed.

Zee Law Group, Tappan Zee and Kimberly Barrientos for Defendant and Appellant.

The Fullman Firm, Adam C. Fullman, Christopher J. Peters and Sam Dehbozorgi for Plaintiff and Respondent.

_____

Under the Rosenthal Fair Debt Collection Practices Act (the Rosenthal Act or the Act; Civ. Code,[1] § 1788 et seq.), a debt collector may not "collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected." (§ 1788.15, subd. (a).) The trial court found that defendant and appellant Collect Access, LLC (Collect Access) violated this law in its efforts to collect a default judgment against plaintiff and respondent David C. Minser, Jr. The court set aside the underlying judgment on equitable grounds, awarded Minser statutory damages and attorney fees, and ordered Collect Access to repay the amount it had collected from Minser as restitution.

Collect Access appeals from both the trial court's judgment (case No. B318325) and its order awarding attorney fees (case No. B321996). Collect Access alleges that it did not violate the Rosenthal Act because, among other reasons, it did not know that service of process had not been legally effected. In addition, Collect Access contends that the award of attorney fees must be denied in its entirety or reduced because Minser's attorneys did not sufficiently document the work they performed. We disagree and affirm.

---

[1] Unless otherwise specified, subsequent statutory references are to the Civil Code.

## FACTUAL BACKGROUND AND PROCEEDINGS BELOW

On November 16, 2000, First Select, Inc.,[2] filed the underlying suit against Minser, and in February 2001 obtained a default judgment for $3,434.86. First Select filed a proof of service in which a process server attested to "personally delivering" the complaint and various other documents to Minser on November 20, 2000, at an address on Curbaril Avenue in Atascadero. The appellate record contains no other documents from this initial phase of the litigation, but the parties stipulated to this basic sequence of events, and also agreed that at some later point, First Select assigned the judgment to PGMI, LLC.

In May 2008, PGMI in turn assigned the judgment to Collect Access. Collect Access served Minser by mail with notice of the assignment, as well as a copy of Collect Access's application to renew the judgment for 10 years. The proof of service forms indicate that Collect Access mailed both of these documents to an address on El Camino Real in Atascadero.

In August 2015, the San Luis Obispo County Superior Court issued a writ of execution on the judgment, which by this point, with interest and fees, amounted to $10,480.71. One month later, Collect Access filed a notice of levy on Minser's bank account. This was apparently the first attempt by any creditor to collect on the judgment, more than 14 years after it was entered.

Minser responded on September 22, 2015, submitting a declaration in which he claimed that he had not been served with the original complaint, and that he had learned of the judgment's existence less than two weeks earlier. One month later, Minser's

---

[2] First Select is a defendant in this case but is not part of the appeals.

attorney sent Collect Access a letter reiterating Minser's statements and including additional information. In a new declaration accompanying the letter from his attorney, Minser stated that his mother had suffered a stroke in early November 2000, and that he had been in San Diego taking care of her on the day the process server claimed to have served him with the complaint at his home on Curbaril Avenue. Minser's mother submitted a declaration of her own confirming her son's account, as well as a copy of records from a hospital in San Diego stating that she had been a patient there from November 3 to 12, 2000. Minser also provided utility bills for the summer of 2008 indicating that he resided at an address on Olmeda Avenue and not the one on El Camino Real where Collect Access sent the notices of assignment and of its application to renew the judgment; Minser further asserted he never lived or received mail at the El Camino Real address. Minser's attorney warned that if Collect Access continued to use judicial proceedings to collect the debt, "Misner will file a [c]omplaint for violations of the Rosenthal Act."

Moe Essa, a Collect Access employee, declared that, upon receiving the declarations, he "personally reviewed the records and files pertaining to . . . Minser's account." According to Essa, "Collect Access relied on the [p]roof of [s]ervice filed by . . . First Select in [2000],"[3] and on that basis believed Minser was aware of the lawsuit. In addition, Essa stated that Collect Access had

---

[3] Essa lists the date of the First Select proof of service as 2008, but this appears to be a typo. There is no indication in the record that First Select had anything to do with the case after obtaining a default judgment in 2001.

4

used a credit report to determine Minser's address in 2008 and served him by mail at that address with notice of the assignment and renewal of the judgment. The credit report attached to Essa's declaration, however, indicated Minser lived on "El Camido" and not "El Camino."

Beyond his review of the file containing the initial proof of service and the 2008 credit report, Essa did not claim to have done any additional research on the veracity of Minser's claims. Nor did Collect Access cease using judicial resources to collect on the judgment. In December 2015, the superior court issued an order to garnish Minser's wages by $350 per pay period. According to Essa, Collect Access received its final payment on the judgment in November 2016.

On June 17, 2016, Minser filed the instant suit against Collect Access, its attorneys, Zee Law Group, PC, and First Select, alleging causes of action for violating the Rosenthal Act, restitution and unjust enrichment, civil conspiracy, and unfair business practices. The suit also sought to set aside and vacate on equitable grounds the default judgment in the original lawsuit. The court entered default judgment on Minser's complaint against all three defendants[4] in July 2019, but Collect Access later obtained relief from the default judgment.

After a bench trial, the court ruled in favor of Minser on all the causes of action except civil conspiracy. The court vacated

---

[4] In the default judgment, the court found Collect Access and Zee Law Group jointly and severally liable for $41,424.41 in damages, attorney fees, and costs. Minser had named First Select as a defendant only for the purpose of vacating the original default judgment against him, and the court did not order First Select to pay any damages.

and set aside the original default judgment against Minser and awarded him $1,000 in statutory damages pursuant to section 1788.30, subdivision (b); statutory attorney fees pursuant to section 1788.30, subdivision (c); and $10,152.59 in restitution for the amount wrongfully collected from him.  In a separate order, the court fixed the fees and costs awarded to Minser as $12,100.50 in attorney fees and $1,097.23 in costs.

Collect Access filed timely appeals from the judgment and from the order awarding attorney fees.

## DISCUSSION

### A.    Because the Case Was Filed as an Unlimited Civil Case and Was Never Reclassified, This Court Has Jurisdiction over the Appeal

The appellate record contains conflicting information as to whether this case was a limited or unlimited civil matter. Minser's complaint indicated that it was unlimited, but many of his later filings, as well as the trial court's judgment, were labeled "limited civil."  This calls into question our jurisdiction over the case, in that appeals from judgments in limited civil cases are to the appellate division of the superior court, not to this court.  (Code Civ. Proc., § 904.2.)  If this were indeed a limited civil case, we would transfer the appeals to the appellate division of the San Luis Obispo County Superior Court for disposition.  (See *Dedication & Everlasting Love to Animals, Inc. v. City of El Monte* (2022) 85 Cal.App.5th 113, 121-122.)

"A civil case is jurisdictionally classified as either limited or unlimited civil at its outset." (*Stratton v. Beck* (2017) 9 Cal.App.5th 483, 493.)  A limited case allows for limited relief: the amount in controversy may not exceed $25,000, and only certain forms of relief are available.  (See Code Civ. Proc., § 85.)

6

If a plaintiff means to file a limited civil case, he must designate it as such in the caption of the complaint, and the parties must do likewise in all subsequent pleadings.  (Cal. Rules of Court, rule 2.111(10); Code Civ. Proc., § 422.30.)  If a case has been miscategorized, the trial court may reclassify it, either upon a petition from one of the parties or on its own motion.  (Code Civ. Proc., § 403.040.)  Unless the parties have taken these steps to classify a case as limited, "a civil case is classified as unlimited by default."  (*Stratton v. Beck*, *supra*, at p. 493.)

It is undisputed that Minser initially filed the case as an unlimited civil case.  While the parties themselves may later have treated the case as limited, the trial court never issued an order to reclassify it.  It is therefore an unlimited case, and we have jurisdiction over the appeals.

Collect Access contends that the trial court erred by conducting the trial as if this were a limited civil case.  Collect Access points to only one situation in which the court deviated from the rules for unlimited cases: it allowed Collect Access to submit a written declaration from its employee Essa in lieu of live testimony.  Under Code of Civil Procedure section 98, this is permissible only in limited cases.

It does not follow, however, that this requires us to reverse the judgment.  "A judgment of the trial court may not be reversed on the basis of the erroneous admission of evidence, unless that error was prejudicial.  (Code Civ. Proc., § 475.)"  (*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799.)  Collect Access has not even attempted to demonstrate it suffered prejudice.  The trial court did not bar Essa from testifying in person; it was Collect Access's decision to submit a written declaration.  Furthermore,

7

the trial court credited the facts in Essa's statement.  It seems unlikely that Collect Access's case would have been stronger if Essa had testified in person and been subject to cross-examination.

**B.     The Rosenthal Act**

The Rosenthal Act was designed "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  (§ 1788.1, subd. (b).)  The law bars debt collectors from engaging in a wide range of conduct, including threatening debtors (§ 1788.10), harassing them with profane language (§ 1788.11), and disclosing information about a debt to the debtor's employer or other third parties (§ 1788.12).  In addition, as relevant to this case, the Act forbids debt collectors from "collect[ing] or attempt[ing] to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected."  (§ 1788.15, subd. (a).)

A debt collector who violates the Act is liable for the debtor's actual damages (§ 1788.30, subd. (a)), plus reasonable attorney fees (*id.*, subd. (c)).  Debt collectors who "willfully and knowingly" violate the Act are also subject to an additional penalty of $100 to $1,000.  (*Id.*, subd. (b).)

Collect Access contends that the trial court erred in several respects in finding it violated the Rosenthal Act.  First, it contends it is not a debt collector as defined in the Act, and it is therefore not subject to the Act.  Next, it argues that the litigation privilege shields it from liability under the Act.  Finally,

8

it alleges that it did not know that Minser had not received valid service of process, and therefore did not violate section 1788.15.

1. *Substantial Evidence Supports the Trial Court's Finding that Collect Access is a Debt Collector under the Act*

The Rosenthal Act defines " 'debt collector' " as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." (§ 1788.2, subd. (c).) The statute defines " 'debt collection' " as "any act or practice in connection with the collection of consumer debts." (*Id.*, subd. (b).) Collect Access contends that the trial court erred by finding that it was a debt collector under the Rosenthal Act because "Minser did not provide any testimony or evidence that Collect Access regularly engages in debt collection." The trial court rejected this argument, noting that Essa testified that "Collect Access maintains the records and files pertaining to . . . Minser's debt account 'in the regular course of business,' that he personally reviewed these records, that 'Collect Access relied on' an Experian credit report 'to communicate with Mr. Minser,' " and that Collect Access admitted in its own post-trial brief that it " 'submitted the wage garnishment to the Sheriff.' " (Italics omitted.)

The question of whether Collect Access met the definition of a debt collector is predominantly factual in nature, and we therefore review the trial court's determination for substantial evidence. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.) Under that deferential standard and the "very broad" definition of debt collector under the Rosenthal Act (*In re Ganas* (Bankr. E.D.Cal. 2014) 513 B.R. 394, 404), we cannot say the trial court erred.

9

### 2. *The Litigation Privilege Does Not Apply to Collect Access's Conduct*

Collect Access contends the trial court erred by holding that the litigation privilege does not apply to its efforts to collect on the judgment against Minser. We disagree. Collect Access is correct that the litigation privilege "has been broadly applied" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955) and, where it does apply, provides " 'absolute[ ] immun[ity] from tort liability' " for communications made in connection with litigation. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.) The privilege has been held not to apply, however, when it conflicts with another statute "more specific than the litigation privilege," when the second statute "would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1246.)

The court in *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324 (*Komarova*) held that, under this rule, the litigation privilege "cannot be used to shield violations of the [Rosenthal] Act." (*Id.* at p. 337.) Collect Access attempts to distinguish *Komarova* on the ground that in this case, unlike in *Komarova*, "There are no contentions of repeated threatening phone calls or any other similar conduct specifically excluded by the Rosenthal Act." We disagree. First, Minser did allege that Collect Access engaged in conduct specifically prohibited by the Rosenthal Act. The sole purpose of section 1788.15, subdivision (a), which is part of the Act, is to bar debt collectors from continuing judicial proceedings to collect a debt while knowing there was no valid service of process, as the court found Collect Access did in this case. Second, the *Komarova* court did not base

10

its decision on the specific allegation that the debt collector engaged in harassing phone calls, but rather on the ground that, " 'Were the privilege to apply broadly to Rosenthal Act claims . . . it would effectively immunize conduct that the Act prohibits.' " (*Komarova, supra,* at p. 338, quoting *Oei v. N. Star Capital Acquisitions, LLC* (C.D.Cal. 2006) 486 F.Supp.2d 1089, 1100.) This is particularly true here, where the statute Collect Access was accused of violating specifically bars debt collectors from using "judicial proceedings" when the debt collector knows service was not legally effected. (§ 1788.15, subd. (a).) Applying the litigation privilege to the judicial proceedings here would essentially render section 1788.15 null and void. Collect Access complains that the trial court's ruling "would effectively bar application of the litigation privilege to any communications or filings related to consumer debt collection actions." But that indeed appears to have been the Legislature's intent in regulating debt collectors' use of judicial proceedings to collect debts.

> 3. *Section 1788.15 Does Not Require Actual Knowledge of No Effective Service of Process*

A debt collector is liable under section 1788.15, subdivision (a) if it uses judicial proceedings to collect a debt when it "*knows that service of process . . . has not been legally effected*" (italics added). Relying solely on the statutory language, Collect Access argues that the word "knows" should be interpreted to mean actual knowledge, and contends that it therefore did not violate the statute when it continued to collect from Minser after learning of Minser's declarations.

We are not persuaded. "[T]he Act is 'a remedial statute [that] should be interpreted broadly in order to effectuate its

11

purpose.' " (*Komarova, supra*, 175 Cal.App.4th at p. 340.) In general, the use of the term " 'knowledge' " in a statute without further qualification "encompasses both actual knowledge *and* constructive knowledge." (*Tsasu LLC v. U.S. Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 718 (*Tsasu LLC*).) The *Tsasu LLC* court defined these terms as follows: " 'Actual' knowledge exists when a person is subjectively aware of a fact. (E.g., *In re A.L.* (2019) 38 Cal.App.5th 15, 21 . . . .) 'Constructive' knowledge exists when a person is deemed in the eyes of the law to be aware of a fact, either because (1) the person has ' "knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact [citations]" ' (*Melendrez*[ *v. D & I Investment, LLC.* (2005)] 127 Cal.App.4th [1258,] 1252, quoting *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1443 . . .), or (2) the fact is contained in a document that has been ' "recorded as prescribed by law." ' [Citations.]" (*Tsasu LLC, supra*, at p. 719.)

We agree with Collect Access that Minser's declaration was not sufficient to supply actual knowledge in this instance. The documentation from the hospital showed only that Minser's mother was a patient there from November 3 to November 12, 2000. The only evidence that Minser himself was away from home on November 20, and therefore unable to receive service of process, came from the declarations of Minser and his mother. As Collect Access notes, both of these declarations were self-interested. They did not prove conclusively that the service of process form was false.

Nevertheless, this was not a case with a bare denial by a debtor seeking to escape a judgment. The hospital records show that Minser's mother suffered a stroke in November 2000, and it

12

would be entirely natural for Minser to remain in San Diego to care for her after she was released. Minser also provided evidence in the form of utility bills that he did not live on El Camino Real in Atascadero in July 2008 when Collect Access tried to serve him by mail with notice of the assignment and renewal of the judgment; the credit report relied upon by Collect Access for Minser's address further indicated a different street name (El Camido Real) than the one to which Collect Access sent notice (El Camino Real). This was sufficient and substantial evidence to support a finding of constructive knowledge, in that Collect Access was aware of circumstances which upon reasonable inquiry would have shown service of process essential to jurisdiction over Minser and his property had not been legally effected. Instead of conducting any inquiry, Collect Access continued to rely on the questionable information in its original file. Even now, after years of litigation and with every incentive to find evidence of the validity of the proof of service, Collect Access remains empty-handed. It was reasonable for the trial court to infer that had Collect Access undertaken a reasonable inquiry at the time, it would have likely concluded that Minser never received service of process of the underlying lawsuit or the notice of assignment and renewal of the judgment.

In *Tsasu LLC*, the court interpreted the term "knowledge" as encompassing both actual and constructive knowledge not only because of the plain language of the statute, but also as a matter of public policy. (*Tsasu LLC*, *supra*, 62 Cal.App.5th at pp. 719-720.) *Tsasu LLC* concerned the interpretation of Code of Civil Procedure section 764.060, which allows a purchaser of property to rely on the validity of a quiet title judgment on the property so long as the purchaser "act[s] in reliance on the judgment without

13

knowledge of any defects or irregularities in the judgment or the proceedings." (*Ibid.*) The court reasoned that if knowledge as used in the statute were interpreted to mean only actual knowledge, it would create "perverse incentives [by] . . . discourag[ing] prospective buyers from checking the record of title or from heeding 'warning signs' necessitating further inquiry." (*Tsasu LLC, supra*, at p. 720.)

The same is true here. The Rosenthal Act was designed "to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other" (§ 1788.1, subd. (a)(2)), and "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." (*Id.*, subd. (b).) If section 1788.15 were interpreted in the manner Collect Access urges, it would encourage creditors to behave as Collect Access did in this case—to wait until 14 years of interest have accrued, and evidence regarding the circumstances of the initial debt has disappeared, before finally seeking to collect. If not for the coincidence that Minser's mother suffered a stroke less than a month before First Select purportedly served Minser, it is questionable whether Minser would have succeeded in this suit. A construction that adds the word "*actual*" to section 1788.15's requirement of what the debt collector "knows" would not accomplish the Legislature's purposes in enacting the Rosenthal Act, and would encourage debt collectors to rely on suspect documentation regarding service by discouraging if not outright excusing the consideration of any compelling contrary evidence.

We note that such an interpretation of section 1788.15, subdivision (a) would not unjustly impose liability on a debt collector confronted with contradictory evidence about service of

14

process given other safeguards in the Rosenthal Act. The Act elsewhere provides an affirmative defense to debt collectors that unintentionally violate the Act through a bona fide error. Specifically, section 1788.30, subdivision (e) provides that "A debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of [the Act], if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation." Here, Collect Access did not assert this affirmative defense, nor adduce any evidence to support it.

### 4. *It Is Irrelevant that No Court Had Declared the Judgment Against Minser Void*

Collect Access argues that it did not violate the Rosenthal Act by relying on the validity of the default judgment against Minser because no court had yet declared the judgment void. But section 1788.15 does not depend on whether a judgment has been declared void; rather, it focuses on whether the debt collector knew service of process had not been legally effected. Whether a court has taken action to set aside the default judgment is irrelevant.

### C. The Trial Court Did Not Err by Finding Collect Access Liable under the Unfair Competition Law

Collect Access contends the trial court erred by finding it violated the Unfair Competition Law (the UCL; Bus. & Prof. Code, § 17200 et seq.). We disagree. The UCL " 'establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.' [Citation.] . . . [¶] . . . [¶] Under its 'unlawful' prong, 'the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the

UCL.' [Citation.] Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong. . . ." (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1554.) A violation of the Rosenthal Act can serve as a predicate offense for the UCL (see *Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 35-37), and we see no reason to make an exception for Collect Access's violation of section 1788.15.

## D. The Attorney Fees Award Was Not an Abuse of Discretion

A debtor who prevails in an action under the Rosenthal Act is entitled to recover reasonable attorney fees and costs. (§ 1788.30, subd. (c).) In this case, the trial court awarded Minser $12,100.50 in attorney fees and $1,097.23 in costs. We review an award of statutory attorney fees after trial for abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.) Collect Access contends the trial court's award was an abuse of discretion because Minser failed to submit sufficient documentation of the work his attorneys performed. We disagree.

In support of his claim for attorney fees, Minser submitted two declarations from Christopher Peters, an attorney at the firm that represented him. The first declaration, dated 2018, showed the firm's work leading up to a default judgment against Collect Access from which Collect Access later obtained relief. The declaration stated that Peters and two other attorneys worked on the case, with Peters billing 6.1 hours at $350 per hour, another attorney billing 0.6 hours at $400 per hour, and a third attorney working 10.55 hours at $250 per hour. In addition, according to the declaration, a legal secretary worked 11 hours at $90 per

16

hour.  The declaration described the tasks each person performed, but did not include a breakdown of the amount of time each person spent on each task, nor did it list specific dates.  In all, the declaration claimed the firm had billed $6,002.50 in attorney fees and incurred $1,037.23 in costs.

Peters submitted a second declaration in 2022, after the court entered judgment in favor of Minser.  In the new declaration, Peters stated that he had billed 9.5 additional hours on the case, and anticipated spending three more hours to draft a reply brief and appear in court to argue the attorney fee motion, for a total of 12.5 hours.  At Peters's new billing rate of $400 per hour, the total bill for his work was $5,000.  He also asserted that two of the firm's paralegals had spent a total of 12.2 hours on the case at a billing rate of $90 per hour, for a total of $1,098.  Peters also claimed $60 in costs based on the court fees for filing the motion.  In all, Peters claimed $6,098 in fees and $60 in costs.  In the new declaration, Peters listed several documents his firm had filed, but he did not break down the amount of time he and the paralegals had spent at each step.

Collect Access argues that Minser's claim of attorney fees is unsubstantiated because he did not provide any billing statements, and included a declaration from only one of the three attorneys who worked on the case.  Collect Access acknowledges that "an award of attorney fees may be based on counsel's declarations, without production of detailed time records" (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375), but argues that in the absence of billing statements, "the hours spent must be substantiated."  (*Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 15.)  The court in *Copenbarger* suggested that attorneys may substantiate

17

their claims by "testif[ying] about their hourly rates, the work performed, and the amount of time spent on various tasks." (*Ibid.*) It does not follow, however, that each attorney who worked on the case must testify or submit a separate declaration. We see no functional difference in the method followed here, in which a single attorney who worked on the case and is familiar with his firm's billing rates submits a declaration under penalty of perjury as to how much each attorney worked.[5]

Collect Access also contends the attorney fee award must be reversed because Minser's attorneys presented the hours they worked in the form of "block billing without any way to determine how much time was spent on each task." Collect Access is correct that the trial court may, in its discretion, reduce an award of attorney fees if the attorney's bills are too vague to allow the court to determine if the hours spent on a case were justifiable. (See *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1325.) In this case, some of the claims in Peters's declarations were indeed vague. In the first declaration, Peters

_____

[5] In its reply brief, Collect Access additionally argues the trial court erred by including fees for work performed before vacatur of the July 2019 default judgment against Collect Access. This argument was not made in Collect Access's opening brief, and "[w]e do not consider arguments raised for the first time in a reply brief." (*Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 636, fn. 8.) Even if we were to consider this argument, the trial court found the pre-July 2019 work was properly included in the fee award given Minser's unrebutted "contention that [Collect Access's] intentional evasion of service of process caused the additional fees." Collect Access fails to demonstrate any abuse of discretion in this determination.

listed the tasks each person performed, but did not specify the time spent on each task. In the second declaration, he did not even list the specific tasks he and his paralegals did, apart from 3.5 hours Peters asserted he had spent or would spend on the attorney fee motion itself.

Collect Access made the same argument before the trial court, which rejected it by awarding Minser the full amount of attorney fees he requested. The court did not abuse its discretion in doing so. Block billing, though discouraged, is "not objectionable per se." (*Christian Research Institute v. Alnor*, *supra*, 165 Cal.App.4th at p. 1325.) In a complex case with dozens of attorneys billing hundreds of hours, it would be particularly inappropriate to submit bills with no indication of how much time each attorney spent on which task. In this case, however, Minser's attorneys billed only around 30 hours in aggregate, along with approximately 23 more hours from support staff, to prosecute a case from the initial complaint through trial. "A trial court's attorney fee award will not be set aside 'absent a showing that it is manifestly excessive in the circumstances.' [Citation.]" (*Raining Data Corp. v. Barrenechea*, *supra*, 175 Cal.App.4th at p. 1375.) Given the efficiency in the billable time expended by Minser's counsel to prosecute the case, Collect Access has not come close to meeting this standard.

19

## DISPOSITION

The judgment is affirmed, as is the trial court's order awarding attorney fees and costs.  Minser is awarded his costs on appeal.

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID C. MINSER, JR., | B318325, B321996 |
| Plaintiff and Respondent, | (San Luis Obispo County Super. Ct. No. 16CVP0156) |
| v. | |
| COLLECT ACCESS, LLC, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on May 24, 2023, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

_____

WEINGART, J.          ROTHSCHILD, P. J.          CHANEY, J.