Filed 12/18/23; Certified for Publication 1/5/24 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| JASMINE MOTEN, | |
| Plaintiff and Appellant, | E078871 |
| v. | (Super.Ct.No. CVRI2104511) |
| TRANSWORLD SYSTEMS INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Sunshine S. Sykes, Judge. Reversed.

Jubilee Legal, Daniel Abraham; Law Office of Monica Hartsock and Monica Hartsock for Plaintiff and Appellant.

Rob Bonta, Attorney General, Nicklas A. Akers, Assistant Attorney General, Michele Van Gelderen and Daniel M.B. Nadal, Deputy Attorneys General, for the California Attorney General as Amicus Curiae on behalf of Plaintiff and Appellant.

Sessions, Israel & Shartle, Justin H. Homes and James K. Schultz for Defendant and Respondent.

1

Plaintiff and appellant Jasmine Moten appeals the grant of the anti-SLAPP motion filed by defendant and respondent Transworld Systems Inc. (Transworld). In 2007, Moten took out a student loan from Union Federal Savings Bank to finance her college education. The loan was transferred to the National Collegiate Funding, LLC (Trusts) and was then assigned to a specific loan trust, National Collegiate Student Loan Trust 2007-3 (NCSLT 2007-3). When Moten defaulted on her payments, Transworld, a debt collection company, became the post-default servicer of the loan. Transworld hired counsel to file a debt collection action on behalf of NCSLT 2007-3 in Riverside Superior Court against Moten to recover the debt. That matter is still pending.

Plaintiff filed this putative class action against Transworld claiming that it did not have a valid legal claim based on its manufacturing documents to prove ownership of the loan by NCSLT 2007-3. Plaintiff alleged that such deceptive practices were violations of the Robbins-Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.; hereafter, the Rosenthal Act) and the Federal Fair Debt Collection Practices Act (Federal Act); and violated Unfair Competition, Unlawful Business Acts and Practices (UCL) and Business and Professions Code section 17200. Transworld filed its special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP Motion). The trial court granted the anti-SLAPP motion finding that Moten's complaint arose from Transworld's exercise of free speech and petitioning rights, protected activity under Code of Civil Procedure section 425.16, and that Moten failed to demonstrate a probability of prevailing on her complaint because her claims were barred by the litigation privilege of Civil Code section 47, subdivision (b).

Moten contends on appeal that the trial court erred by determining that (1) the debt collection practices of Transworld were protected activity under the anti-SLAPP laws; and (2) her complaint should not have been dismissed based on the trial court erroneously concluding that her Rosenthal Act and UCL claims were barred by the litigation privilege, and that she had failed to demonstrate a probability of prevailing on the merits.

**FACTUAL AND PROCEDURAL HISTORY**

A.    ORIGINAL COMPLAINT

Moten filed her class action complaint on October 4, 2021 (Complaint). She alleged Transworld was a third-party debt collector for NCSLT 2007-3. Transworld was a California corporation that was doing business in Riverside County. Moten identified the class as all California residents who had been pursued indirectly or directly by Transworld consumer debt collections in California courts since September 30, 2018, on behalf of the Trusts and the NCSLT 2007-3.

Moten provided a history of the origination of student loans and the sale of those loans. Moten alleged that Transworld had worked with "affiliates" and "business partners" to attempt to collect consumer debts. These affiliates and business partners included the Trusts. She alleged the Trusts, Transworld and NCSLT 2007-3 had no legal right to enforce the debts and did not have the authority to try to collect the debts by filing lawsuits.

Moten alleged that First Marblehead Corporation acquired student loans from various banks, which had originated the loans and intended to sell them to various trusts that were to hold the loans. The loans were identified in the purchase and sale agreement

3

between First Marblehead Corporation and Trusts.  The identification of the loans was to be accomplished through documents titled "Schedules" attached to the purchase and sell agreement.  Moten alleged that the Schedules had been lost.  Moten alleged that First Marblehead Corporation failed to properly account for the loans and those who purchased the loans "were aware that records identifying ownership and proof of assignment were legally deceptive" but chose to proceed.  These purchasers then collected the debt on the student loans without "sufficient records."  Transworld became involved several years after the Trusts were set up and its employees had no personal knowledge of the transactions involving the assignments of the loans to the Trusts.

Moten alleged Transworld replaced the Schedules with "Substitute Rosters, " which Transworld claimed were the actual Schedules.  Transworld filed several lawsuits in California courts relying on these Substitute Rosters to prove ownership of the loans.

Moten also provided that the Consumer Financial Protection Bureau (CFPB) investigated Transworld.  Attached to the Complaint was a "Consent Order" issued by the CFPB on September 15, 2017.[1]  Transworld was found to have committed several offenses between November 1, 2014, and April 25, 2016, on behalf of the Trusts by filing "tens of thousands of collections lawsuits against borrowers."  Transworld had consented

---

[1] On September 26, 2022, Moten filed a request for judicial notice.  We will partially grant the request for judicial notice to the extent the information was attached to the Complaint.  This includes only item No. 1, which is the Consent Order.  The request to judicially notice lower court filings and rulings in out-of-state cases are not relevant to this appeal and Moten admits were not presented to the trial court.

to the order being issued but did not admit to any of the findings of facts or conclusions of law.

The Consent Order provided that Transworld operated as the sub-servicer for the Trusts. Law firms hired by Transworld had initiated 37,689 debt collection lawsuits in courts throughout the United States on behalf of the Trusts. With those lawsuits, Transworld employees signed affidavits that were used by the law firms that Transworld hired in the debt collection proceedings. Affiants swore that they had personal knowledge of the assignment of the loans and could testify regarding their personal knowledge of the loans. Further, many of the affiants claimed to have reviewed the chain of title records but they, in fact, reviewed them online through another agency. The CFPB found these employees had no personal knowledge of the record of the chain of title possessed by Transworld. Employees continued to sign these affidavits with no personal knowledge of the records.

Further, in these lawsuits filed between 2014 and 2016, documentation of the complete chain of title to show the debt was owned by the NCSLT was lacking. The Consent Order provided that Transworld was to take action to remedy the lawsuits and was not to initiate any collections lawsuits unless they had the documentation necessary to prove that the Trusts owned the debt, including a complete chain of assignment. Employees of Transworld were not to provide any false affidavits.

Transworld supported the suit against Moten, *National Collegiate Student Loan Trust 2007-3 v. Jasmine Moten,* Riverside Superior Court, case No. 2003940 (Lawsuit), by hiring attorneys and providing documentation. The Lawsuit was based on a loan that

Moten took out in July 2007 with Union Federal Savings Bank to borrow $24,000 to cover her college education. The finance charge was $91,761.60 making the total cost of the 12-year loan to be $115,761.60. Moten admitted making some payments to NCSLT 2007-3 unaware they could not provide proper documentation of ownership, but she fell behind on the payments. Upon default, the loan was transferred to Transworld to collect on the debt. The last payment that Moten made on the loan was on January 23, 2017. The NCSLT 2007-3 trust filed the Lawsuit on September 30, 2020, seeking $59,170.44.

Plaintiff alleged that Transworld and NCSLT 2007-3 had no legal standing to file the lawsuit as they could not provide proper documentation by way of the original Schedules transferring the loans. Moten referred to out-of-state cases involving Transworld and testimony by Transworld employees that they lacked all the documentation and that employees had no knowledge of the origin of the loans nor personal knowledge of the transfer of the loans.

Moten's first cause of action was for a violation of the Rosenthal Act. Transworld was a debt collector within the meaning of Civil Code section 1788.2, subdivision (c). Transworld violated the Rosenthal Act in "various ways" including Civil Code section 1788.13, subdivision (i), which prohibits the use of false representations concerning the nature of services or business being rendered by the debt collector.

The second cause of action was under the UCL. Transworld violated the UCL by engaging in the "above stated and prohibited unlawful, unfair, fraudulent, deceptive, untrue, and misleading acts and practices as part of its direct and indirect collection and attempted collection of debts that have previously been adjudicated." Moten referred to

6

Civil Code section 1788.17 and 15 U.S.C. 1692 (e)(2). Moten alleged she suffered injury because she had to pay money to defend herself in the court action brought by Transworld. Moten alleged that Transworld's actions were fraudulent.

The third cause of action was for declaratory relief. Transworld should be barred from filing these actions in courts based on insufficient evidence of owning these debts. Moten also alleged that Transworld was already found to have insufficient evidence of the chain of title of these loans purported to be owned by NCSLT 2007-3 in a final court case and because of its agreement with the CFPB.

In her prayer for relief, she requested that the trial court certify the class and appoint her class representative. She requested declaratory and injunctive relief. Moten sought an award of statutory penalties, damages and other relief based on her individual claims. She also sought an award of attorney's fees and costs.

Transworld filed a demurrer on December 22, 2021. Transworld alleged that on September 30, 2020, NCSLT 2007-3 filed the Lawsuit against Moten for breach of contract. The Lawsuit pertained to a student loan taken out by Moten, which she defaulted on, and there was an amount due and owing to NCSLT 2007-3. Transworld alleged that NCSLT 2007-3 was the assignee of the loan. The case was still pending.

Transworld argued that the Complaint was barred by the litigation privilege of Civil Code section 47, subdivision (b)(2). In addition, Transworld argued that Moten had failed to state a cause of action for a violation of the Rosenthal Act. Plaintiff had alleged that Transworld violated the Rosenthal Act by making false representations. It was not enough to allege that NCSLT 2007-3 had no evidence to support that she owed them a

7

debt. She could not prove that they were harassing, oppressive, abusive, false, or deceptive in their debt collection actions and lawsuit. Further, her UCL claim failed as she failed to allege that Transworld committed any unlawful, unfair or fraudulent business practice against her. Finally, her declaratory relief claim was barred by the four-year statute of limitations. Her last payment was on January 23, 2017; she had until October 4, 2021, to file her complaint.

Moten filed opposition to the demurrer. She argued that Transworld was not a party to the litigation; the Lawsuit involved the NCSLT 2007-3 and not Transworld. Transworld was not protected by the litigation privilege. Further, the gravamen of Moten's case was the creation by Transworld of the replacement Substitute Rosters that she alleged were fraudulent. These fraudulent Substitute Rosters were then used by other parties to further debt collection and litigation. Moten also provided that her allegation that the use of the Substitute Rosters violated the Rosenthal Act in "various ways," including Civil Code section 1788.17, which incorporates the Federal Act. She sufficiently alleged a violation of 15 U.S.C. 1692e, which provides, " 'a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." She attached copies of declarations from Transworld employees from a federal action, insisting that Transworld did not comply with the Consent Order after it was issued. Transworld filed a reply to the opposition to the demurrer.

8

## B.     ANTI-SLAPP MOTION

On the same day that Transworld filed the demurrer, it filed the anti-SLAPP Motion.  Transworld argued that Moten's causes of action arose from Transworld's protected activity and she could not prevail.  Transworld argued that Moten generally alleged in her Complaint that Transworld's actions violated the Rosenthal Act and UCL by participating and filing the Lawsuit.  These actions were protected activity under Code of Civil Procedure section 425.16, subdivision (e).

Transworld also argued that Moten could not demonstrate a probability of prevailing in order to defeat the anti-SLAPP motion.  Moten's only evidence in support of her Complaint was subject to the litigation privilege under Civil Code section 47, subdivision (b)(2).  Transworld argued, as it had in the demurrer, that the sole claim of the violation of the Rosenthal Act was the filing of the Lawsuit, which clearly was subject to the litigation privilege.  The UCL claim also failed.  Moten failed to allege that Transworld committed any unlawful, unfair or fraudulent business practice that impacted her directly in order for her to prevail on the merits of her claim.  She had received a fee waiver and had not paid to defend herself.  Transworld also contended that any declaratory relief was time-barred.

Moten filed opposition to the anti-SLAPP motion.  Moten insisted that the gravamen of the Complaint was that Transworld manipulated evidence and engaged in unfair and deceptive creation of records and that evidence was used by NCSLT 2007-3 to file lawsuits in an attempt to collect her loan and other loans taken out by members of the class.  Moten provided that in order to prevail on a debt collection action, the entity that

9

attempted to collect the debt must show that it owns the right to collect the debt and a "true and accurate accounting of the amount owed." Moten insists that Transworld lost the Schedules, which showed the transfer and balance of debts from the originator of the loans. Moten alleged that Transworld "elected to improvise and manufacture 'evidence' in the form of 'Schedules' to give the appearance the NCSLT had actually . . . acquired the debts."

Moten further provided that the CFPB had investigated the practices of Transworld, which resulted in a Consent Order. She insisted the Consent Order stated that Transworld falsely attested it had personal knowledge of the account records and consumer's debt, and personal knowledge of the chain of assignments establishing ownership of the loans. It further provided, "In addition, since November 2014, Law Firms hired by Respondent filed hundreds of debt Collections Lawsuits without the documentation to prove Trust ownership of the loans."

Moten contended that none of the allegations against Transworld arose from protected activity. The allegations against Transworld involved the manipulation of evidence even prior to the lawsuits filed by the NCSLT 2007-3. Transworld was not a party or counsel in any of the collection lawsuits. Code of Civil Procedure section 425.16 did not apply to third parties; only NCSLT 2007-3 engaged in protected activity. Further, the trial court should reject the anti-SLAPP as it was being used as a "sword" by Transworld to protect its deceptive business practices. Moten also claimed that she had a probability of prevailing. Moten could show that Transworld had manufactured the Substitute Rosters in order to prove her Rosenthal Act and UCL claims. Making false or

10

misleading representations violated the Rosenthal Act. The litigation privilege did not apply. Further, the litigation privilege did not apply to Transworld as a third party to the litigation.

Transworld filed a reply to the opposition to the anti-SLAPP motion. Transworld alleged that NCSLT 2007-3 attached to its complaint the loan taken out by Moten, along with assignment documentation showing it was assigned to NCSLT 2007-3 on September 20, 2007. Moten alleged in the Complaint that "the dispute between Plaintiff and Transworld arose when Plaintiff was sued in Riverside Court on September 30, 2021 under a collection action based off of Transworld's false and deceptively created Schedules." Transworld claimed that the gravamen of Moten's Complaint was based on the fact that she was sued. Transworld insisted that the Complaint was based on it providing supporting loan documentation to assist in the filing of NCSLT 2007-3's lawsuit. Transworld argued that the claims in the Complaint "arose" from the filing of the Lawsuit and were subject to dismissal based on the anti-SLAPP motion. Moten's claims would not exist independent of the Lawsuit.

Transworld also argued that Moten had not provided any evidence that showed the probability of prevailing in her lawsuit. The claims were barred by the litigation privilege. Further, the evidence presented in support of the Complaint was hearsay, suffered from a lack of foundation, and contained improper opinions and conclusions. As for the Consent Order, Transworld did not admit to any facts or liability. Transworld made no admission of wrongdoing. Further, declarations by employees of Transworld

11

provided by Moten showed that there were no errors or missing documents; they only referred to inadequate training by Transworld.

### C.    RULING ON THE ANTI-SLAPP MOTION

The trial court's ruling on the anti-SLAPP motion was filed on February 24, 2022. Neither party requested oral argument. The trial court granted the anti-SLAPP motion finding only that (1) Transworld met its burden of establishing that the Complaint arose from its exercise of free speech or petitioning rights as defined in Code of Civil Procedure section 425.16, subdivision (e); and (2) Moten failed to demonstrate a probability of prevailing as her causes of action were barred by the litigation privilege of Civil Code section 47, subdivision (b). The demurrer to the Complaint was deemed moot.

### DISCUSSION

Moten insists the trial court erred by granting Transworld's anti-SLAPP Motion because the causes of action brought pursuant to the Rosenthal Act and the UCL claims, were an exception to the anti-SLAPP statutes because Transworld was engaged in illegal activity and Transworld's conduct underlying Moten's claim involved a broad "swath" of debt collection activity that is not protected activity.[2] Moten also claims that she showed a probability of prevailing as the trial court erred by finding that the litigation privilege applied to the case. Finally, she argues that the public interest exception of Code of Civil

---

[2] Moten appears to have abandoned her claim that Transworld was not entitled to protection under Code of Civil Procedure section 425.16 because it was a third party to the litigation.

Procedure section 425.17 exempts her Complaint from the anti-SLAPP statutes. Transworld responds that the act of filing and prosecuting a civil case falls squarely within the categories of the anti-SLAPP statutes. Moten's Complaint "leaves no doubt" that her entire dispute with Transworld relates to actions taken in support of the debt collection action, which is protected activity. Moreover, Moten failed to meet her burden of showing a probability of prevailing or that she met the public interest exception under Code of Civil Procedure section 425.17.

## A. ANTI-SLAPP LAW AND ROSENTHAL ACT

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill rights to free speech or petition by dragging the speaker or petitioner through the litigation process, without genuine expectation of success in the suit. The Legislature enacted [Code of Civil Procedure] section 425.16 to provide a summary disposition procedure for SLAPP claims. Toward this end, [Code of Civil Procedure] section 425.16 authorizes courts, upon motion by anyone who claims to be the target of a SLAPP suit, to probe the basis for any cause of action allegedly arising from protected communicative activities, and to strike it if the claimant cannot show minimal merit." (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 591-592.)

Code of Civil Procedure section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a

13

probability that the plaintiff will prevail on the claim." Code of Civil Procedure section 425.16, subdivision (e), provides that any written or oral statement made before a judicial proceeding is protected activity. " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

"On appeal, we examine without deference an order granting an anti-SLAPP motion to strike. [Citation.] In doing so, we conduct 'an independent review of the entire record.' " (*Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 79.)

" 'The Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." [Citation.] The Rosenthal Act is " 'a remedial statute [that] should be interpreted broadly in order to effectuate its purpose.' " [Citation.] It was enacted in 1977, the same year that its federal counterpart, [the Federal Act] . . . was enacted. [Citation.] In addition to its other requirements and prohibitions, the Rosenthal Act generally requires debt collectors to comply with the provisions of the [Federal Act]" (*Young v. Midland Funding LLC*, *supra*, 91 Cal.App.5th 63, 77.) " '[A] violation of the [Federal Act] is per se a violation of the Rosenthal Act.' " (*Id.* at p. 89.)

B. <u>PROTECTED ACTIVITY</u>

Moten first claims that the anti-SLAPP statutes do not protect illegal activity. Transworld was engaged in illegal activity by creating the Substitute Rosters and representing that they were the original Schedules. She relies on *Flatley v. Mauro* (2006)

14

39 Cal.4th 299, which holds, "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence *conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Id.* at p. 320, italics added.) The circumstances in which the protected activity may be found illegal as a matter of law are narrow; only when the defendant concedes the claim arose from illegal activity or it was conclusively established. (*Id*. at pp. 316-317.)

Moten claims she proved that Transworld engaged in illegal activity based on the allegations in the Complaint and the CFPB Consent Order.[3] She insists that the Substitute Rosters were fraudulent and were not the original Schedules despite being represented as such. However, these allegations do not conclusively establish illegal activity. The CFPB found that Transworld supported numerous debt collection actions filed by the NLSCT between 2014 and 2016 with improper affidavits and lacked the proper documentation to prove ownership of the debt. In agreeing with the Consent Order, Transworld did not admit any of the facts or legal conclusions. Transworld was not to file any further lawsuits without obtaining the appropriate documentation. Transworld contests that the Substitute Rosters are fraudulent. Further, the Consent

---

[3] Moten also refers to additional evidence in the request for judicial notice, which was not presented to the trial court. We do not consider this evidence for the first time on appeal.

15

Order does not refer to Substitute Rosters that were attached to the Lawsuit filed in 2022. There was no "conclusively established" evidence before the trial court that Transworld was engaged in illegal activity by providing the Substitute Rosters used in the Lawsuit. This differs from *Flatley*, as the evidence in that case was "uncontroverted." (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 328-329.) Although the Consent Order does refer to a lack of documentation provided by Transworld in prior cases, it is not conclusive evidence that the Substitute Rosters here are fraudulent. At this stage in the proceedings, although Moten alleges the Substitute Rosters are fraudulent, there was no conclusive evidence of illegal activity.

Moten also contends that the allegations in the Complaint were based on the allegation that Transworld provided manufactured documents in the Lawsuit to prove that NCSLT 2007-3 owned the loan taken out by Moten, which is independent of the Lawsuit. Moten argues that her claims would exist regardless of the Lawsuit. However, in this case, the Complaint was filed based on the litigation. The Substitute Rosters were not produced, according to the allegations in the Complaint, until the Lawsuit was filed and Moten's Complaint only alleges that her claims arise from the Lawsuit. Based on the facts of this case, the Substitute Rosters were part of the litigation and were protected activity under Code of Civil Procedure section 425.16, subdivision (e).

C.     PROBABILITY OF PREVAILING

Moten insists the trial court erred by finding that her Rosenthal Act and UCL claims were barred by the litigation privilege of Civil Code section 47. The Attorney General of the State of California has filed an amicus brief contending that the litigation

16

privilege does not apply to consumer Rosenthal Act debt collection litigation.[4] Relying on *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 337 (*Komarova*) and *People v. Persolve, LLC.* (2013) 218 Cal.App.4th 1267, 1277, the Attorney General contends that debt collection violations are an exception to the litigation privilege. The Attorney General argues it is essential that consumers be able to protect themselves from unfair debt collection practices. If the litigation privilege were to apply, the Rosenthal Act would be significantly impacted or wholly inoperable. We conclude the litigation privilege does not apply to Moten's claims.

" ' "The anti-SLAPP statute does not insulate defendants from any liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity." ' " (*Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 916.) In an anti-SLAPP case, in order to avoid dismissal, a plaintiff has the burden "[t]o establish a probability of prevailing." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) "[T]he plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Ibid.*) " '[C]laims with the requisite minimal merit may proceed.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 385.)

---

[4] The Attorney General does not express an opinion as to whether the anti-SLAPP Motion should have been granted. It only argues that the litigation privilege does not apply to Rosenthal Act violations.

"Communications in judicial proceedings are privileged under section 47, subdivision (b)(2). '[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' " (*Komarova*, *supra*, 175 Cal.App.4th at p. 336.)

In *Komarova*, the court rejected that the litigation privilege applied to the Rosenthal Act claims. In that case, the debt collector's conduct consisted primarily of making threatening phone calls to the plaintiff, both before and after the debt collector filed an arbitration claim, and it commenced judicial proceedings without proper service of process. These were the alleged violations of the Rosenthal Act. (*Komarova*, *supra*, 175 Cal.App.4th at 331-336.) The court held that the debt collector could not argue that the threatening phone calls were tied to the filing of the arbitration claim, which was protected by the litigation privilege, and evade the Rosenthal Act's prohibitions against calling without disclosing an identity, frequent calling amounting to harassment, and communications with an employer. (*Id.* at pp. 338-340.) It found, "We must . . . be mindful of the ease with which the [Rosenthal] Act could be circumvented if the litigation privilege applied. In that event, unfair debt collection practices could be immunized merely by filing suit on the debt. . . . [W]e conclude that the [Rosenthal] Act would be significantly inoperable if it did not prevail over the privilege, where, as here, the two conflict." (*Id.* at p. 340.)

In *Oei v. N. Star Capital Acquisitions, LLC* (C.D.Cal.2006) 486 F.Supp.2d 1089, the plaintiffs alleged multiple instances of harassing communications and conduct

18

occurring prior to the debt collection action being filed. The plaintiffs filed their own action raising violations of the Rosenthal Act. The defendant contended that the causes of action should be dismissed as they were protected under the litigation privilege. (*Id.* at p. 1092, 1098.) The court found that applying the litigation privilege to immunize this conduct would "vitiate the Rosenthal Act and render the protections it affords meaningless." (*Id.* at p. 1100.)

In *People v. Persolve*, *supra*, 218 Cal.App.4th 1267, the People filed an action under the unfair competition law (Bus. & Prof. Code, § 17200), based on communications that allegedly violated specific provisions of the Rosenthal Act and the Federal Act. The appellate court found that the action was not barred by the litigation privilege. (*Persolve*, at pp. 1275-1277.) "Applying the privilege to unlawful practices based on specific violations of the [Rosenthal] Act and the Federal Act would effectively render the protections afforded by those acts meaningless. . . . Civil statutes for the protection of the public should be interpreted broadly in favor of their protective purpose. Accordingly, the People's unfair competition law claims that are based on conduct that is specifically prohibited by the [Rosenthal] Act and/or the Federal Act are not barred by the litigation privilege." (*Id.* at pp. 1276-1277.)

Here, Moten contended that the Substitute Rosters attached to the complaint in the Lawsuit were created by Transworld and were fraudulent. They were to be used to show the chain of assignment of Moten's loans. This was a violation of the Rosenthal Act— that debt collectors are barred from using any false, deceptive or misleading representations in connection with the collection of any debt. (15 U.S.C., § 1692e; Civ.

19

Code, §§ 1788.13, subd. (i), 1788.17.) To bar, at the pleading stage, Moten's allegations that Transworld fabricated evidence in order to collect on the debt would undermine the gravamen of the Rosenthal Act.

Transworld relies on *Boon v. Professional Collection Consultants* (S.D. Cal. 2013) 978 F.Supp.2d 1157, and *Lopez Reyes v. Kenosian & Miele, LLP* (N.D. Cal. 2007) 525 F.Supp.2d 1158, to argue that *Komarova* should be viewed narrowly. In those cases, the courts found that the only causes of action were limited to filings in state court, and therefore, clearly fell within the litigation privilege.

In *Lopez*, the court found, "The only allegedly wrongful debt collection practices in the present case occurred entirely in the context of the filing of a state court complaint to recover a debt. The [Rosenthal Act] does not explicitly regulate the content of complaints or other pleadings that are transmitted in connection with an actual legal proceeding and only prohibits the use of the courts as a means to collect a debt in a few specific ways, none of which are at issue here." (*Lopez Reyes v. Kenosian & Miele, LLP*, *supra*, 525 F.Supp.2d at p. 1164.) In *Boon,* which was decided after *Komarova*, the court interpreted *Komarova* narrowly by finding that *Komarova* depended on the fact that the plaintiff alleged, in addition to the state court action, that the debt collector made threatening phone calls to the plaintiff. Since the plaintiff in *Boon* only alleged that the filing of the state court action violated the statute of limitations, the litigation privilege did not apply. It stated that there must be proof of other attempts to collect on the debt other than the filing of the state court action. (*Boon v. Professional Collection Consultants*, *supra*, 978 F. Supp. 2d at p. 1161.)

20

Initially, this court is not bound by federal district court decisions. (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 327-328.) Moreover, we do not view *Komarova* so narrowly. Another court has interpreted *Komarova* more broadly to decline to apply the litigation privilege to most debt collection legal actions involving violations of the Rosenthal Act. (See *Minser v. Collect Access, LLC* (2023) 92 Cal.App.5th 781, 791-792.) We follow *Komarova* and find that the trial court erred by finding the litigation privilege applied.

Moreover, as stated, Moten alleged more than just the filing of the Lawsuit that violated the Rosenthal Act. Rather, her claim was based on a violation of the Rosenthal Act because Transworld falsely represented that the Substitute Rosters provided to prove ownership of the debt were the original documents showing the NCSLT 2007-3 was the owner of the loan. Assuming Moten's allegations are true that these documents were fraudulent, this violated the Rosenthal Act by using false or deceptive means to collect or attempt to collect the debt. Conceivably, the Substitute Rosters could have been shown to Moten prior to the filing of the lawsuit to prove that she owed the money to NCSLT 2007-3. Assuming the phone calls made in *Komarova* occurred only during the arbitration, the court certainly would not have found differently. Both were violations of the Rosenthal Act regardless of when the violation occurred. The trial court erred by finding that the litigation privilege applied to Moten's claims.

Transworld also argues that Moten could not show a probability of prevailing because her Rosenthal Act, Declaratory Relief, and UCL claims will fail on their merits. It is apparent from the brief written ruling from the trial court that it only considered the

21

litigation privilege in considering the probability that Moten would prevail on her claims. Remand is necessary in order for the trial court to consider whether, without applying the litigation privilege, and considering the evidence presented, Moten would prevail on her claims. (See *Hunter v. CBS Broadcasting, Inc.* (2013) 221 Cal.App.4th 1510, 1527 ["[T]he more prudent course is to remand the matter to the trial court to determine in the first instance whether [the plaintiff] demonstrated a reasonable probability of prevailing on the merits of his causes of action"].) We will reverse the order granting the anti-SLAPP Motion and direct the trial court to consider the matter on its merits.

D. PUBLIC INTEREST EXCEPTION TO CODE OF CIVIL PROCEDURE SECTION 425.17

Moten further claims that the public interest exception to Code of Civil Procedure section 425.17 exempts her claims from the anti-SLAPP Motion.

Code of Civil Procedure section 425.17, provides in pertinent part as follows: "(a) The Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process or Section 425.16. [¶] (b) Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different

22

from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision. [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."

Moten argued in her opposition to the anti-SLAPP Motion that she was bringing her Complaint both on her own behalf and in the public interest. Transworld notes that Moten seeks her own damages in the case and cannot make a claim under the public interest exception of Code of Civil Procedure section 425.17. It does not appear the trial court considered the public interest exception. Since we are returning the matter to the trial court for it to consider whether Moten has a probability of prevailing on her causes of action, it should also consider the public interest exception.

## DISPOSITION

The trial court's order granting Transworld's anti-SLAPP Motion is reversed. The trial court is directed to determine whether Moten met her burden of demonstrating a probability of prevailing on the merits of her claims and to consider the public interest

exception of Code of Civil Procedure section 425.17.  As the prevailing party, Moten is awarded her costs on appeal.


MILLER _____
J.


We concur:


RAMIREZ _____
P. J.


FIELDS _____
J.

Filed 1/5/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

**<u>ORDER</u>**

|  |  |
|---|---|
| JASMINE MOTEN,<br>        Plaintiff and Appellant,<br><br>v.<br><br>TRANSWORLD SYSTEMS INC.,<br>        Defendant and Respondent. | E078871<br><br>(Super.Ct.No. CVRI2104511)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT

    The requests for publication of the nonpublished opinion filed in the above matter on January 4, 2024, are GRANTED. The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(2), (3), and (6).

    IT IS SO ORDERED that said opinion filed December 18, 2023, be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

                                 MILLER _____
                                                     J.

We concur:

RAMIREZ _____
                         P. J.

FIELDS _____
                         J.